ETHRIDGE, Chief Justice
(dissenting) :
The difficulties in this case arise from the peculiar structure of the Small Loan Act. It creates two categories of licensees — brokers and lenders. Brokers can charge substantial “service charges” measured by the statute. However, lenders, which are entirely separate but act only through a broker, are permitted to charge interest at six percent per annum, and nothing else.
..This bifurcated system of small loans was in effect and substantially unregulated until the Small Loan Regulatory Act of 1958. Miss.Laws 1958, Ch. 170, being Miss.Code Ann. §§ 5591-01 to 5591-54 (Supp.1964). It contained the two-category system. Apparently Mississippi is the only State with a small loan act regulating a two-part system. Other States bypass any broker, and regulate directly the lender, who deals directly with the borrower. Obviously it is easier to regulate one person, the lender, and thus to require him to give the borrower statements of loan, etc., than to make a lender see that a licensed broker complies with the statutory mandates.
Accordingly, the controlling opinion is in error when it states that the Mississippi Act “is similar to a great many state statutes regulating the small loan business.” Those statutes and decisions are not in point here
i The Stanfords signed the note, were charged service charges and interest allowed by statute, and received the money on their loan. The broker is insolvent, and is unavailable. Yet the majority opinion permits the Stanfords to keep the money and deny the debt to Consumers Credit. This windfall to them is rationalized by giving a liberal construction to a penalty statute. With deference, I cannot think that this result is justified either by the terms of the statute or a just result.
The controlling opinion is based on the penalty clause of Code Section 5591-14 of the Small Loan Act That section requires that at the time a loan is made “every licensee” shall deliver to the borrower a statement itemizing the date, amount of loan, schedule of payments, type of security, agreed rate of charge, etc. The licensee is further required to give to the person making it, at the time payment is made, a receipt specifying the amount of the payment.
Subsection (c) of section 5591-14 then provides:
PENALTY. Any contract of loan in the making or collection of which any provision of this section shall have been violated either knowingly or without the exercise of due care to prevent the same, shall be void and the licensee shall have no right to collect or receive any principal, charges, or recompense whatsoever.
The note received by the lender contained the itemized statement required by the statute, and immediately before the admitted signatures of both borrowers, it had the following: “The borrower acknowledges receipt of a statement of the loan in English as required by section 14(a) of the Mississippi Small Loan Regulatory Act.”
The statute recognizes the right of the broker to collect a service charge for services rendered to borrower by broker in arranging and negotiating a loan, and for “the accounting, guaranteeing, endorsing, collecting and other actual services rendered the borrower by the licensee [broker].” Miss.Code Ann. § 5591-02(3) (Supp.1964). Regulations of the State Bank Comptroller recognize the right of the broker to collect payments. Regulation VIII, subsection (b), states that the complete separation of lender and broker “does not prevent a broker, for the convenience •of the borrower, from cashing any draft * * *, nor shall it limit the services which the act provides a broker may render, namely, in arranging or negotiating the loan and for any accounting, guaranteeing, endorsing, collection, * * * ” In short, the act not only authorizes a broker to rep re-, *875 sent the borrower in obtaining the loan, but also in collecting payments by the borrower for the borrower’s convenience.
At the trial, Stanford admitted that he received the money on the loan, and that he signed the note, above which was the acknowledgment that he had received the statement of loan. He made eleven payments on it in the amount of $75 each. Mrs. Stanford also admitted that she signed the note. She stated the papers were not completely filled out, but when asked what was missing, she said, “I really couldn’t say, just exactly.” Dunham, an employee of plaintiff, said that plaintiff had no supervision over the broker preparing the form of note and statement of loan. Hen-drick, president of Consumers Credit, testified that he personally did not see the papers before the closing of the loan, but his company reserved the right to approve or decline any loan. Consumers Credit approved this loan when' it received from the broker the executed note containing an itemization of charges and deductions authorized by statute.
Under subsection 14(c), the “penalty” provision, if failure to give a statement of loan or receipt for payment is done “knowingly,” that is, to the knowledge of the lender, the loan is void. It is undisputed here that the lender did not “know” that the statement was not given to the borrower.
Also, if the provision for giving a statement of the loan to the borrower is violated “without the exercise of due care to prevent the same,” the loan is void. Does the evidence reflect that the lender failed to exercise due care to prevent a violation by the broker of the requirement that the borrowers receive the statement of loan?
Immediately above the borrowers’ signatures in the note is the recitation that they received the statement of loan. They admitted they signed this, and the lender, plaintiff, received the note in this form. It seems to me that a borrower, who signs an instrument with that agreement in it, should be bound by the statement, in the absence of evidence that the lender knew or should have known that it was false, and there is no evidence to that effect. To permit borrowers to admit their signature, but to-deny the effect of what they signed, as. against the rights of the lender who accepted in good faith the completed, executed instrument, would authorize a disavowal of liability by borrowers in every instance where the lender sues on a note. We are not here dealing with the liability of the broker, which is another type of question. The lender had the right to rely on the admitted signatures of the borrowers to a document reciting that they received the statement of loan. The penalty in this respect would not apply, in my opinion, since this was the exercise of due care by the lender required by the act.
Section 14 also requires every licensee to give the borrower receipts for payment. The borrowers admit they were given some receipts, and state categorically that they were not given receipts on other payments of the total of eleven made. Here again is the question of whether the penalty applies. The lender did not know receipts were not given by the broker, who was collecting the payments, as it had a right to do, for the convenience of.the borrowers. The record reflects that this is done in most instances. The statute provides that the service charge made by the broker may include services “to be rendered the borrower by the licensee [broker] in * * * collecting and other actual services rendered the borrower by the licensee.” Miss.Code Ann. § 5591-02(3) (Supp.1964). Regulation VIII of the State Bank Comptroller, subsection B, is to the same effect.
Does the record show a lack of due care by Consumers Credit in seeing that the borrowers obtained receipts for payments? Representatives of the lender did not know that the broker was not giving receipts for all payments. Apparently, the controlling opinion holds that the lender must take unidentified affirmative steps or make rules to require its broker to give the receipts, *876 with some verification therefor. However, I can think of no practical way by which a lender could do this, when the broker is collecting the payments for the convenience of the borrower. Both are licensed by the state, and found by its agency to be reliable. For the purpose of collections, the broker is the agent of the borrower and not the lender. If this is true, then the borrower cannot complain about what his agent, the broker, failed to do. Certainly he should not assert a penalty against a lender for what the borrower’s agent failed to do.
It would appear that, for the benefit and convenience of both the borrower and the lender, the Stanfords followed the practice, in making their eleven payments, of making them to and through the broker. The note itself provided that installments should be paid “to the lender named in (B) above, at its offices or its order. * * * ” Further, “each of us understands that the lender has no agent authorized to accept payments hereon except at its office, * * * and that the signers may remit to the lender directly by mail or otherwise.” Despite this, the borrowers made eleven payments through the broker. Under the statute the parties could have expressly agreed, but did not, to pay to the broker as a convenience. Since they could have so agreed, and in fact did so, by their actions, it would seem that the borrowers were using the broker as their agent for the purpose of transmitting their payments to the lender. Hence the broker was acting as the agent for the borrowers in collecting the installment payments. The broker may also have been acting in a two-fold capacity, as agent of the lender in the collection and transmission of payments. But this does not negative the fact that the broker’s service charge included a charge for collection of the account, the service charge was paid by the borrowers, payment through the broker by the borrowers was a convenience to them, and the broker was acting as their agent also.
I would conclude, therefore, that the record does not support the Stanford’s affirmative defense that the lender was guilty of a want of due care in not preventing the broker from giving receipts for each payment. This is especially true since the forfeiture statute, Section 14(c), is a penalty, and should be strictly construed against its invocation.
Finally, the result reached by affirming this judgment raises more questions than it either reaches or settles. What will now constitute “due care” by a lender, in seeing to it that a licensed broker does what he is required to 'do? The majority now holds that “substantial compliance * * * is not sufficient to avoid the penalties * * * ” In a suit by a lender, can any borrower simply orally deny that he was not given a statement of loan and receipts for every payment, and make an issue of fact for a jury on whether the broker completely complied and whether the lender can recover a just debt? Is it consistent to say that generally a penalty is strictly construed, but in the small loan act it is liberally construed? These and other questions, stemming from the decision today, raise serious problems in the administration of the act by the State Bank Comptroller and in the making of enforceable loans by lenders through licensed brokers.
GILLESPIE, P. J., and BRADY, J., join in this dissent.